UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KENNETH VAN AERNAM,

                                        Plaintiff,

                 -vs-                                                    06-CV-0053C(F)

MICHAEL L. NENNO,

                                        Defendant.

_____

APPEARANCES:    ZDARSKY, SAWICKI & AGOSTINELLI (K. MICHAEL SAWICKI,
                ESQ., of Counsel), Buffalo, New York, for Plaintiff.

                ELIOT SPITZER, ATTORNEY GENERAL OF THE STATE OF
                NEW YORK (PETER B. SULLIVAN, ESQ., Assistant Attorney
                General, of Counsel), Buffalo, New York, for Defendant.

                KANJI & KATZEN, PLLC (RIYAZ A. KANJI, ESQ., of Counsel),
                Ann Arbor, Michigan, for Proposed Intervenor the Seneca Nation of
                Indians.


        On January 25, 2006, plaintiff Kenneth Van Aernam, a member of the Seneca

Nation of Indians, filed a complaint in this court pursuant to 42 U.S.C. § 1983 for

declaratory and injunctive relief against defendant Michael L. Nenno, an Acting New York

State Supreme Court Justice.  The next day, on January 26, 2006, plaintiff filed a motion

(Item 2) for a temporary restraining order and preliminary injunctive relief to prevent Justice

Nenno from exercising jurisdiction over a divorce action brought in New York State

Supreme Court, Cattaraugus County, by plaintiff's spouse, Jean Van Aernam.  Plaintiff

claims that Justice Nenno's rulings in the state court action are in conflict with a default

divorce decree entered in an action previously filed by plaintiff in the Seneca Nation's

Peacemakers Court. The Seneca Nation has moved (Item 16) to intervene as a plaintiff pursuant to Rule 24 of the Federal Rules of Civil Procedure.

Prior to the filing of responsive pleadings, the court directed briefing on threshold jurisdictional issues and other matters relating to the injunctive relief sought by plaintiff, and conducted a hearing on May 22, 2006.[1] Having considered the positions of the parties and proposed intervenor, the court now makes the following ruling in accordance with Fed. R. Civ. P. 52(a) and 65(d).

## FINDINGS OF FACT

### A.    The Underlying State and Tribal Court Divorce Actions

Plaintiff and Jean Van Aernam were married in 1976, and resided on the Seneca Nation's Cattaraugus Reservation for several years after their marriage. Jean Van Aernam is not a member of the Seneca Nation.

In January 2004, Jean Van Aernam commenced a divorce action in New York State Supreme Court, Cattaraugus County, which was assigned to Justice Nenno. Plaintiff duly appeared in that action, and subsequently moved to dismiss it on the ground that it had not properly been filed. Prior to ruling on the motion to dismiss, Justice Nenno issued orders granting Jean Van Aernam various forms of relief, including temporary maintenance of $400 per week, exclusive occupancy of the marital residence, an award of temporary

---

[1] The hearing was commenced upon receipt and review of the parties' and proposed intervenor's written submissions, as directed by the court (*see* Item 5 and Docket Entry #20). While the hearing consisted primarily of oral argument, the parties and proposed intervenor have submitted (and the court has considered) affidavits and exhibits, including orders and excerpts from the record of proceedings before the state and tribal courts, sufficient to render appropriate findings of facts and conclusions of law with respect to the issues raised by plaintiff in his complaint and motion for preliminary injunctive relief, in accordance with the Federal and Local Rules of Civil Procedure.

attorneys' fees in the amount of $5,000, and forensic accounting fees in the amount of $5,000 (Item 27, Ex. A; *see also* Item 3, ¶ 3).

The state court divorce action remained pending until May 27, 2005, when Justice Nenno granted Kenneth Van Aernam's motion to dismiss for lack of jurisdiction, based on Jean Van Aernam's failure to file the initiatory summons with the Cattaraugus County Clerk (*see* Item 27, Exs. C & D).[2]  That same day, Kenneth Van Aernam filed a petition for divorce in the Peacemakers Court of the Seneca Nation.  Jean Van Aernam was served with a copy of the petition, but did not appear before the tribal court.  On July 13, 2005, the tribal court entered a "default divorce decree" granting plaintiff a divorce on grounds of "irreconcilable differences" (*see* Item 3, Ex. A).  The decree also directed plaintiff to pay maintenance of $400 per week along with health insurance and other financial obligations, and to provide lodging and use of a car (*id.*).  This decree was entered as a final order of the tribal court on August 1, 2005 (*see id.*, Ex. B).

Meanwhile, on or about June 20, 2005, Jean Van Aernam commenced a new divorce action in New York State Supreme Court, assigned Index No. 70026.  Plaintiff again moved to dismiss, this time on the ground that it was barred by *res judicata* by virtue of the decree of the Peacemakers Court (*see* Item 1, ¶ 11).  In opposition to this motion, Jean Van Aernam argued that under New York Indian Law § 46, the Peacemakers Court lacked jurisdiction over the divorce action because she is not a member of the Seneca Nation.  On November 2, 2005, Justice Nenno denied plaintiff's motion, and issued an order in favor of Mrs. Van Aernam directing plaintiff to make payments for temporary

---

[2]Justice Nenno's May 27, 2005 decision was memorialized in an order of dismissal entered July 8, 2005 (Item 27, Ex. D).

maintenance in the amount of $2,000 per week, attorneys' fees in the amount of $10,000, and forensic accounting fees in the amount of $10,000 (*see* Item 3, Ex. C).  Plaintiff's appeal from this order is pending in the Appellate Division of New York State Supreme Court, Fourth Department.

Jean Van Aernam subsequently filed a motion in state court seeking to hold plaintiff in contempt for failing to comply with Justice Nenno's order.  Justice Nenno scheduled a hearing on the contempt motion for January 27, 2006.

## B.    The Federal Court Action

As mentioned above, plaintiff commenced this action two days prior to the scheduled state court contempt hearing.  Plaintiff alleges federal jurisdiction under 28 U.S.C. §§ 1331 and 1343,[3] and seeks redress under 42 U.S.C. § 1983[4] for deprivation of

---

[3]Federal question jurisdiction is alleged under 28 U.S.C. §§ 1331 and 1343.  Section 1331 provides: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

Section 1343 provides:

(a) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

. . .

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States . . . .

[4]42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an

his rights under the Constitution, laws, and treaties of the United States.   In his subsequently filed motion for a temporary restraining order and preliminary injunction, plaintiff sought the immediate relief of preventing the contempt hearing from going forward, and also seeks an order declaring that Justice Nenno has no authority to exercise jurisdiction over the matrimonial action brought by Jean Van Aernam because:

1.      The issues have previously been determined by the Seneca Nation's tribal court, pursuant to the Nation's right of self-government as recognized in the 1794 Treaty of Canandaigua and the United States Constitution;

2.      Under 25 U.S.C. § 233, the state court is prohibited from exercising civil jurisdiction in matters involving alienation of Indian lands, including Jean Van Aernam's claim for equitable distribution of marital property;

3.      Under the federal common law doctrine of tribal exhaustion, Jean Van Aernam is required to fully pursue her claims in the tribal courts with respect to their jurisdiction over the matrimonial action (*see* Item 1, ¶¶ 18-21).

On February 6, 2006, this court issued an order (Item 5) denying plaintiff's motion for a temporary restraining order as moot upon receiving information that Justice Nenno had adjourned the state court contempt hearing until a future date.[5]   The court also directed the parties to submit briefs on the issue as to whether a federal district court may exercise jurisdiction over an action to enjoin proceedings in state court.   Then, on February 27, 2006, this court issued a further order (Item 14) granting the request of

---

act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

[5]The court has since been advised that Justice Nenno has rescheduled the contempt hearing for June 14, 2006.

counsel for the Seneca Nation for permission to be heard on the jurisdictional issue.  The Seneca Nation responded with the motion to intervene as a plaintiff "in order to protect its sovereign right of self-government and the integrity of its judicial system" (Item 18, p.1).

In its order, this court denied plaintiff's motion for a temporary restraining order as moot upon receiving information that Justice Nenno had adjourned the state court contempt hearing until a future date, then undetermined.  The court also directed the parties to submit briefs on the issue as to whether a federal district court may exercise jurisdiction over an action to enjoin ongoing proceedings in state court.

In response to the court's February 6, 2006 order, defendant Nenno submitted a memorandum of law (Item 6)[6] setting forth the following arguments:

1.   This court cannot proceed unless and until Jean Van Aernam is joined as both a necessary and indispensable party to this action, pursuant to Fed. R. Civ. P. 19;

2.   This court should abstain from determining whether Justice Nenno has jurisdiction over the matrimonial action until the state appellate courts have first decided the issue, citing the Anti-Injunction Act, 28 U.S.C. § 2283; *Younger v. Harris*, 401 U.S. 37 (1971); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) (the "*Rooker/Feldman* doctrine"), and *People ex rel. Kennedy v. Tyler*, 269 U.S. 13 (1925).

_____

[6]Although not designated as such, the court will consider this submission by defendant as a motion in lieu of responsive pleading, in accordance with Fed. R. Civ. P. 12(b)(1) and (7), in light of the unusual post-commencement procedural posture of the action.

In reply (Item 10), plaintiff contends that these arguments do not directly address the court's concerns, expressed in the February 6 order, about jurisdictional impediments to the federal court action.  Responding to defendant's joinder and abstention arguments, plaintiff contends that (1) Jean Van Aernam is not a necessary or indispensable party, and the action may proceed in her absence; and (2) none of the abstention doctrines cited by defendant applies to the circumstances presented here.

The Seneca Nation, as proposed intervenor, adds that the federal courts have repeatedly exercised subject matter jurisdiction to enjoin ongoing state court proceedings and to issue corresponding declaratory relief when necessary to preserve sovereign tribal rights against state encroachment (*see generally* Item 18).

## CONCLUSIONS OF LAW

**A.    Jurisdiction**

The issue is not particularly well settled as to whether a federal district court may exercise jurisdiction over a section 1983 action brought by a member of an Indian tribe seeking to enjoin a state court judge from proceeding in a state court civil case while a parallel action is pending in a tribal court.  Fortunately for this court, many of the very same arguments made by the parties (and the Seneca Nation) in this case have been considered and addressed in this district, in a somewhat different context, by Chief Judge Richard J. Arcara in *Bowen v. Doyle*, 880 F. Supp. 99 (W.D.N.Y. 1995) ("*Bowen* I"), *aff'd*, 230 F.3d 525 (2d Cir. 2000) ("*Bowen* II").

In that case, New York State Supreme Court Justice Vincent E. Doyle, Jr. exercised jurisdiction over a suit brought in state court by individual members of the Seneca Nation

to enjoin Dennis Bowen, who was then the newly elected President of the Seneca Nation, from attempting to remove and replace certain members of the Nation's Tribal Council who had been appointed by the immediate past President.  After a lengthy evidentiary hearing, Justice Doyle granted the plaintiff tribe members' request for injunctive relief and issued an order enjoining Bowen from removing any of the plaintiffs from their positions, essentially countering the effect of orders issued in a parallel action previously brought by Bowen in the Seneca Nation's Peacemakers Court.  Bowen appealed Justice Doyle's order, and moved for a stay pending appeal, but the state Appellate Division denied the request for a stay.

Bowen then filed a section 1983 action in federal court, which was assigned to Judge Arcara, seeking to enjoin Justice Doyle from continuing to exercise jurisdiction over the state court case.  The federal complaint was accompanied by an application for a TRO and preliminary injunction to prevent the state court from conducting a contempt hearing to address Bowen's failure to comply with Justice Doyle's orders.

Bowen urged many of the same grounds in support of his claims for declaratory and injunctive relief as are asserted in Kenneth Van Aernam's complaint in this action.  Bowen claimed, for example, that the Nation's right of self-government under the1794 Treaty of Canandaigua prevented the state court from exercising jurisdiction over matters involving internal tribal affairs, and that the state court defendants[7] were required to exhaust their tribal remedies by fully litigating their claims in the Peacemakers Court action that was filed

---

[7]Along with Justice Doyle, the defendants in Bowen's federal action included State Supreme Court Justice Penny M. Wolfgang (who was assigned by Justice Doyle to preside over the contempt proceeding), and the plaintiffs in the state court action (who were granted permission by Judge Arcara to intervene as federal defendants).

prior to the state court action.  Justice Doyle responded (as Justice Nenno now argues) that the federal court is barred by the Anti-Injunction Act, the *Younger* abstention doctrine, the *Rooker-Feldman* doctrine, and the Supreme Court's *Tyler* decision, from enjoining the state court action.

In a lengthy, well-articulated decision, Judge Arcara found that neither the Anti-Injunction Act, the *Younger* abstention doctrine, the *Rooker/Feldman* doctrine, nor the Supreme Court's *Tyler* decision precluded the federal court from exercising subject matter jurisdiction over a tribe member's section 1983 complaint seeking to enjoin a state court judge from proceeding with a case involving a dispute that was simultaneously being adjudicated in a tribal court.  In making this determination, Judge Arcara relied on federal case law precedent recognizing the propriety of granting relief under section 1983 to enjoin state court proceedings, especially when necessary "to protect a tribal court's order from inconsistent state court directives," *Bowen* I, 880 F. Supp. at 131 (citing *United States v. Washington*, 459 F.Supp. 1020, 1028-31 (W.D.Wash. 1978), *appeal dismissed*, 573 F.2d 1117 (9th Cir. 1978), or to "'preserve the integrity of Indian sovereignty." *Id.* (citing *Tohono O'odham Nation v. Schwartz*, 837 F. Supp. 1024, 1028-29 (D.Ariz. 1993) (dispute over tribe's governance of its members and property presents federal question)); *cf. Sycuan Band of Mission Indians v. Roache*, 54 F.3d 535, 541 (9th Cir. 1994) (threshold jurisdictional issue as to whether state had authority to regulate tribe members' gaming activities on reservation was a question of federal, not state, law).  Noting that the critical issue in *Bowen–i.e.*, whether the state court had the authority to direct an Indian tribe how to

govern itself–clearly presented a federal question, Judge Arcara found no impediments to the exercise of subject matter jurisdiction.

The Second Circuit affirmed, focusing on the state court judges' argument–the same argument made by Justice Nenno here–that the federal district court should refrain from exercising its jurisdiction to enjoin the state court proceedings until the state courts (including the appellate courts) first decide their own jurisdiction. *Bowen* II, 230 F.3d at 529-31. The Circuit found no support for the argument that the "tribal exhaustion rule" barring federal courts from exercising jurisdiction over matters pending in tribal courts, formulated by the Supreme Court in *Iowa Mutual Insurance Co. v. LaPlante*, 480 U.S. 9 (1987), and *National Farmers Union Insurance Cos. v. Crow Tribe*, 471 U.S. 845 (1985), should be extended to cover the situation in *Bowen*. According to the Circuit, the tribal exhaustion requirement is a "'prudential rule' based on principles of comity; it is not a jurisdictional prerequisite." *Bowen* II, 230 F.3d at 530. Similarly, the Circuit upheld Judge Arcara's rejection of the state court judges' attempt to invoke the *Tyler* rule (requiring exhaustion of state court proceedings evolving out of conflicting state and tribal rulings with regard to the same subject matter before a federal court could assume jurisdiction over the dispute), finding the holding of *Tyler* "rooted in habeas jurisprudence" and of no application to the dispute presented in the *Bowen* case. *Id.* at 531.

Of course, the critical issues of tribal governance at stake in *Bowen* are not present in the underlying divorce actions between Kenneth and Jean Van Aernam. It is also readily apparent to this court that New York has a stronger interest in the subject matter of the underlying actions between the Van Aernams than it did with respect to the internal dispute

between and among the tribe members in *Bowen*.  Indeed, the parties here agree that the state and tribal courts have concurrent jurisdiction over domestic relations issues involving a tribe member on the one side and a nonmember on the other.

However, as explained by the Supreme Court in *National Farmers*, federal courts have "frequently been required to decide questions concerning the extent to which Indian tribes have retained the power to regulate the affairs of non-Indians."  *National Farmers*, 471 U.S. at 851 & n. 12 (citing cases).  Thus, "[t]he question whether an Indian tribe retains the power to compel a non-Indian . . . to submit to the civil jurisdiction of a tribal court is one that must be answered by reference to federal law and is a 'federal question' under § 1331."  *Id.* at 852.  While the dispute in *National Farmers* involved the federal court's exercise of jurisdiction to enjoin tribal court proceedings against a non-Indian where no parallel action was pending in state court, no forceful argument has been made that the Supreme Court's reasoning with respect to federal question jurisdiction should not apply here, where a non-Indian has commenced a state court action which has resulted in rulings in conflict with the rulings in a tribal court action commenced by a tribe member.

Accordingly, considering the strength of the local precedent provided by both the district court and circuit court decisions in *Bowen*, and considering the parties' (and proposed intervenor's) submissions and arguments on the jurisdictional issue, this court finds no impediment to an exercise of subject matter  jurisdiction over plaintiff's request for injunctive relief in this matter.[8]

_____

[8]Defendant also argues that the court cannot exercise subject matter jurisdiction over this action unless and until Jean Van Aernam is joined as both a necessary and indispensable party, pursuant to Fed. R. Civ. P. 19.  However, despite ample notice and opportunity to do so, Mrs. Van Aernam has not "claim[ed] an interest relating to the subject of the action," as required by Rule 19(a)(2), and defendant has not made a convincing showing that Mrs. Van Aernam "is so situated that the disposition of the action in

B.     **Plaintiff's Claims for Relief**

In the *ad damnum* clause of the complaint, plaintiff seeks the following declaratory and injunctive relief:

> 1.  Declaring that the defendant and the New York State Supreme Court have no right . . . to exercise jurisdiction over plaintiff in the matrimonial action now pending in that court;
>
> 2.  Enjoining the defendant from exercising any further jurisdiction over the plaintiff in the matrimonial action now pending in the New York State Supreme Court . . . .

(Item 1, p.7).   Although the case is at the preliminary pleading stage and plaintiff has specifically moved for preliminary (rather than permanent) injunctive relief, the demand in the complaint is framed in terms of a request for a permanent injunction.  In addition, given the nature of the action and considering the matters set forth in the briefs, affidavits, exhibits, and arguments, the court finds that the parties have had a full opportunity to present their cases and sees no reason to delay final judicial determination of the merits of the controversy.  *University of Texas v. Camenisch*, 451 U.S. 390, 396 (1981); *Shakur v. Dzurenda*, 2006 WL 1228620, at *1 (D.Conn. May 8, 2006) (primary purpose of preliminary injunction is to preserve status quo between parties pending final determination of the merits) (citing *Arthur Guinness & Sons, PLC v. Sterling Publishing Co.*, 732 F.2d 1095, 1099 (2d Cir. 1984)).   Accordingly, the court will examine the present record to determine whether plaintiff is entitled to permanent injunctive relief.

---

[her] absence may (i) as a practical matter impair or impede [her] ability to protect that interest . . .," as required by Rule 19(a)(2)(i).  Accordingly, the court does not find plaintiff's failure to name Mrs. Van Aernam as a party to be an insurmountable impediment to its exercise of subject matter jurisdiction over the action.

The Supreme Court recently reiterated the standard for courts to apply when considering an application for permanent injunctive relief, as follows:

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief. A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.*, ___U.S.___, 2006 WL 1310670, at *2 (May 15, 2006).

Applying these factors in this case, it is undisputed that plaintiff faces imminent contempt proceedings before Justice Nenno if the injunctive relief sought in the complaint is denied, carrying the potential penalties of incarceration and/or fines. Plaintiff does not seek money damages in this action, and there is nothing in the record to indicate that any remedies available at law would be adequate to compensate for the harm he is likely to suffer should he be found in contempt of the state court orders, which are clearly in conflict with the orders of the tribal court.

It is also clear that in balancing the hardships, defendant faces no offsetting risk of harm should the injunctive relief sought by plaintiff be granted. The only concomitant harm articulated by defendant is the potential impairment of the state's significant interest in having its courts exercise jurisdiction over matters of domestic relations. *See, e.g., Rubino v. City of New York*, 125 Misc. 2d 936, 937, 480 N.Y.S.2d 971, 972 (Sup. Ct. N.Y. Co. 1984) ("Marriage, its licensing, performance and the rights, duties and obligations arising from it, is of paramount importance to the state. . . .") (citing *Maynard v. Hill*, 129 U.S. 190 (1888)). However, as indicated by the parties' submissions, and as discussed in open

court during the hearing, the Seneca Nation Peacemakers Court likewise has jurisdiction over matters of domestic relations involving a tribe member and a nonmember, at least where the marital property is located within the boundaries of tribal land.  *See, e.g., AG Organic, Inc. v. John*, 892 F. Supp. 466, 475 (W.D.N.Y. 1995) (civil jurisdiction over activities of non-Indians on reservation lands presumptively lies in tribal courts unless affirmatively limited by specific treaty provision or federal statute).

Accordingly, the ultimate question faced by this court in balancing the equities to determine the propriety of injunctive relief in this case is whether the tribal court or the state court should be allowed to proceed to judgment where both courts have recognized concurrent jurisdiction over the subject matter of the cases presented to them.  Faced with similar situations, courts of equity have resorted to principles of comity to determine the appropriate forum for adjudication of the underlying dispute.  Perhaps the best example is *Teague v. Bad River Band of Lake Superior Tribe of Chippewa Indians*, 265 Wis.2d 64, 665 N.W.2d 899 (2003), which dealt with the question of concurrent state and tribal court jurisdiction over a contract action involving a non-Indian who was once employed as the general manager of a casino owned by the Bad River Band of the Lake Superior Tribe of Chippewa Indians.  The Wisconsin Supreme Court stated:

> Comity is based on respect for the proceedings of another system of government and a spirit of cooperation. Comity endorses the principle of mutual respect between legal systems, recognizing the sovereignty and sovereign interests of each governmental system and the unique features of each legal system.  It is a doctrine that recognizes, accepts, and respects differences in process.  The doctrine of comity is neither a matter of absolute obligation nor of mere courtesy and good will, but is recognition which one state allows within its territory to legislative, executive, or judicial acts of another, having due regard to duty and convenience and to rights of its own citizens.  . . .

> In the context of state-tribal relations, principles of comity must be applied with an understanding that the federal government is, and the state courts should be, fostering tribal self-government and tribal self-determination.  Through principles of comity, federal and state governments can develop an increased understanding of tribal sovereignty, encourage deference to and support for tribal courts, and advance cooperation, communication, respect and understanding in interacting with tribal courts.  Central to tribal sovereignty is the capacity for self-government through tribal justice mechanisms.  Tribal justice systems are essential to the maintenance of the culture and identity of Indian tribes.

*Id.*, 265 Wis.2d at 99-100, 665 N.W.2d 899, 917 (quotations, citations, footnotes, and internal alterations omitted).

Against this backdrop, the court listed the following factors to be applied, according to appropriate weight on a case-by-case basis, to help determine, "in the spirit of cooperation, not competition," whether the state or the tribal court should continue to exercise jurisdiction over the dispute:

1. Where the action was first filed and the extent to which the case has proceeded in the first court.
2. The parties' and courts' expenditures of time and resources in each court and the extent to which the parties have complied with any applicable provisions of either court's scheduling orders.
3. The relative burdens on the parties, including cost, access to and admissibility of evidence and matters of process, practice, and procedure, including whether the action will be decided most expeditiously in tribal or state court.
4. Whether the nature of the action implicates tribal sovereignty, including but not limited to the following:
   a. The subject matter of the litigation.
   b. The identities and potential immunities of the parties.
5. Whether the issues in the case require application and interpretation of a tribe's law or state law.
6. Whether the case involves traditional or cultural matters of the tribe.
7. Whether the location of material events giving rise to the litigation is on tribal or state land.
8. The relative institutional or administrative interests of each court.
9. The tribal membership status of the parties.
10. The parties' choice by contract, if any, of a forum in the event of dispute.

11. The parties' choice by contract, if any, of the law to be applied in the event of a dispute.
12. Whether each court has jurisdiction over the dispute and the parties and has determined its own jurisdiction.
13. Whether either jurisdiction has entered a final judgment that conflicts with another judgment that is entitled to recognition.

*Id.*, 265 Wis.2d at 101-02, 665 N.W.2d 899, 917-18.

I find the *Teague* court's reasoning and analysis sound, and its common-sense approach helpful.  Accordingly, the court will apply these factors to the facts presented on the current record in aid of its determination whether to enjoin the state court from further exercise of its jurisdiction over the matrimonial dispute between Kenneth and Jean Van Aernam.

## 1.    Where The Action Was First Filed

As set forth in the parties' submissions, the divorce action was first brought in state court by Mrs. Van Aernam in January 2004.  In December 2004, Justice Nenno granted Mrs. Van Aernam's motion for temporary maintenance and fees.   However, in May 2005, Justice Nenno granted Mr. Van Aernam's cross-motion to dismiss the action for lack of jurisdiction based on Mrs. Van Aernam's failure to properly commence the action by filing the initatory summons with the County Clerk.  This rendered the first state court action a nullity.  *See Matter of Gershel v. Porr*, 89 N.Y.2d 327, 330 (1996) ("service of process without first paying the filing fee and filing the initiatory papers is a nullity, the action or proceeding never having been properly commenced"); *One Beacon Ins. Co./CGU Ins. Co. v. Daly*, 7 A.D.3d 717, 776 N.Y.S.2d 829 (2d Dep't 2004) (failure to file initial papers necessary to institute proceeding constitutes nonwaivable jurisdictional defect rendering

-16-

proceeding a nullity); *Sangiacomo v. County of Albany*, 302 A.D.2d 769, 754 N.Y.S.2d 769 (3d Dep't 2003) (nonfiling of summons resulted in failure to invoke court's subject matter jurisdiction, a nonwaivable defect).

Accordingly, the dismissal of Mrs. Van Aernam's improperly commenced initial state court action, followed immediately by Mr. Van Aernam's proper commencement of the tribal court action, weighs in favor of the tribal court's retention of jurisdiction over the underlying dispute.

### 2.    The Parties' and Courts' Expenditures of Time and Resources in Each Court

It is apparent to the court from the parties' submissions that both Mr. and Mrs. Van Aernam have expended considerable time and resources in the state court, while only Mr. Van Aernam has litigated the matter in the tribal court.  This factor weighs in favor of the state court's retaining jurisdiction over the divorce action.

### 3.    The Relative Burdens on the Parties

In this regard, in the absence of any detailed information from the parties, the court will assume that the relative costs associated with continued litigation of the underlying matrimonial action, as well as access to and admissibility of evidence and matters of process, practice, and procedure, do not weigh heavily in favor of either the state or tribal forum.

However, considering which court may decide the matter more expeditiously, it is clear that the tribal court has already brought the divorce action to final judgment (albeit by default), whereas the state courts have yet to rule with finality on Mr. Van Aernam's

jurisdictional challenge (now on appeal) as well as the question of Mr. Van Aernam's contempt of Justice Nenno's prior orders.  Accordingly, this factor weighs in favor of the tribal court's retention of jurisdiction.

### 4.    Implication of Tribal Sovereignty

As discussed above, the nature of the underlying litigation does not directly implicate the sovereignty of the Seneca Nation.  Rather, the outcome of the divorce action directly affects only the private interests of the individual parties, neither of which enjoys immunity from suit in either forum.

Appearing in this action as proposed intervenor, the Seneca Nation has articulated a strong interest in preserving its tribal authority over affairs involving the activities of non-Indians on reservation lands as "an important part of tribal sovereignty."  *LaPlante*, 480 U.S. at 18 (citations omitted). As stated by the Supreme Court in *LaPlante*, "[c]ivil jurisdiction over such activities presumptively lies in the tribal courts unless affirmatively limited by a specific treaty provision or federal statute."  *Id.*; *see also Montana v. United States*, 450 U.S. 544, 565 (1981) (tribe may regulate activities of nonmembers who enter consensual relationships with tribe or its members); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 65 (1978) (tribal courts are appropriate forum for adjudication of disputes affecting personal and property rights of both Indians and non-Indians).

This factor weighs heavily in favor of the tribal court's retention of jurisdiction over the underlying divorce action.

### 5.    Application/Interpretation of Tribal Law or State Law

In light of the recognized concurrent jurisdiction of the tribal and state courts over divorce actions involving tribe members and nonmembers, consideration as to the application of either tribal or state law in the underlying action does not favor one forum over the other.

### 6.    Whether the Case Involves Traditional or Cultural Matters of the Tribe

Similarly, consideration of this factor does not weigh heavily in favor of either the tribal or state forum.

### 7.    Location of Material Events

It is clear that any marital property at issue in the underlying divorce actions is located on the Seneca Nation's Cattaraugus Reservation.  Accordingly, this factor favors the tribal court's retention of jurisdiction.

### 8.    Relative Institutional or Administrative Interests of Each Court

As discussed above with respect to the relative burdens of the parties, it is apparent to this court that the underlying dispute can be most expeditiously resolved in the tribal court.  Likewise, conservation of judicial, institutional, and administrative resources would best be served by allowing the tribal court to retain its jurisdiction.

### 9.    Tribal Membership Status

This factor is neutral.

### 10.     Contractual Choice of Forum/Law

There is no indication that the parties to the underlying action have made any contractual choice of forum or law to be applied in the event of matrimonial dispute.

### 11.     Determination of Jurisdiction

As discussed at length above, both the tribal and state courts have jurisdiction to hear divorce actions between tribe members and nonmembers, and Mr. Van Aernam's challenge to the state court's jurisdiction remains pending in the state appellate court. Accordingly, this factor weighs in favor of the tribal court's retaining jurisdiction over the divorce proceedings.

### 12.     Conflicting Judgments

At this point, only the tribal court has issued a final judgment of divorce.  This factor likewise weighs in favor of the tribal court.

Based on this application of the factors identified in the *Teague* case, the court finds that the balance of equities and considerations of comity in this case favor a ruling that the Seneca Nation Peacemakers Court is the appropriate forum for adjudication of the divorce action between Kenneth and Jean Van Aernam.  In the absence of any showing that the public interest would be disserved, this court finds that injunctive relief is appropriate enjoining Justice Nenno and the courts of the State of New York from any further exercise of jurisdiction over the divorce action involving the Van Aernams.

## CONCLUSION

Based on the foregoing, the court finds that it has subject matter jurisdiction over plaintiff's claim for injunctive relief against Justice Nenno, as set forth in the complaint brought pursuant to 42 U.S.C. § 1983, and that plaintiff has demonstrated irreparable injury, inadequacy of remedies available at law, a balance of hardships favoring a remedy in equity, and no disservice of the public interest.

Accordingly, in order to foster an increased understanding of tribal sovereignty, encourage deference to and support for tribal courts, and advance cooperation, communication, respect, and understanding in the interaction of tribal, state, and federal courts, this court grants plaintiff Kenneth Van Aernam's motion for injunctive relief; and it is hereby

Ordered, that Justice Nenno and the courts of the State of New York are permanently enjoined and restrained in any manner and by any means from proceeding in, and/or exercising any further jurisdiction over the parties and subject matter of, the case presently pending in New York Supreme Court captioned *Jean Van Aernam v. Kenneth Van Aernam*, Index No. 70026; and it is further

Ordered, that Justice Nenno and the courts of the State of New York are permanently enjoined and restrained in any manner and by any means from proceeding in or conducting any contempt proceeding regarding Kenneth Van Aernam in the case of *Jean Van Aernam v. Kenneth Van Aernam*, Index No. 70026; and it is further

Ordered, that Justice Nenno and the courts of the State of New York are permanently enjoined and restrained in any manner and by any means from enforcing or

causing to be enforced any and all orders previously issued in the case of *Jean Van Aernam v. Kenneth Van Aernam*, Index No. 70026; and it is further

Ordered, that the Clerk of the Court shall enter judgment in favor of plaintiff, and close the case.[9]

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: June    9   , 2006

p:\pending\2006\06-53.jun1.06

---

[9]In light of this ruling, the Seneca Nation's motion to intervene pursuant to Fed. R. Civ. P. 24 (Item 16) is denied as moot.